**Clara NOLEN, Plaintiff,**

v.

**FEDEX TECHCONNECT, INC., Defendant.**

Case No. 11–cv–02832–JPM–cgc.

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 4, 2013.

Clara Nolen, Cordova, TN, pro se.

Melissa Kimberly Hodges, Ben J. Scott, Memphis, TN, for Defendant.

**ORDER STRIKING PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS; ORDER GRANTING DEFENDANT'S MOTION TO STRIKE; ORDER STRIKING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING REPORT AND RECOMMENDATION; and ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

JON P. McCALLA, District Judge.

Before the Court is the Report and Recommendation of Magistrate Judge Charmiane G. Claxton (the "Report and Recommendation"), filed April 19, 2013 (ECF No. 38), recommending that the Court grant Defendant FedEx TechConnect, Inc.'s ("Defendant" or "FedEx") Motion for Summary Judgment (ECF No. 28). In the Report and Recommendation, the Magistrate Judge recommends granting summary judgment for Defendant on all of Plaintiff's claims. The Report and Recommendation states,

> It is RECOMMENDED that Nolen cannot state a prima facie claim for Title VII Discrimination and cannot state a prima facie claim of [Family Medical Leave Act ("FMLA")] discrimination. Furthermore, the Magistrate Judge RECOMMENDS that if Nolen could state a claim for prima facie discrimination under Title VII and retaliation under the FMLA, FedEx has articulated a legitimate non-discriminatory reason for Nolen's discharge because Nolen was discharged after three deficiency notices within a twelve-month period; a policy which Nolen was aware of. As Nolen has not offered any facts to dispute FedEx's Motion, Nolen has not demonstrated that her discharge was pretextual. Accordingly, it is RECOMMENDED that FedEx's Motion for Summary Judgment be GRANTED in its entirety.

(ECF No. 38 at 716–17.)

For the reasons stated below, the Court ADOPTS the Report and Recommendation and GRANTS Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

**A. Factual Background**

This action arises out of Plaintiff's allegedly wrongful termination by Defendant. In her Complaint, Plaintiff specifically as-

serts claims for racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and retaliation pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 621 *et seq.* ("FMLA").

Plaintiff did not respond to Defendant's Motion for Summary Judgment (ECF No. 28), nor its Statement of Undisputed Facts (ECF No. 28–2), *see infra* Part II.B., therefore the following facts are undisputed.

Plaintiff, an African American female, was employed by FedEx as a Senior Customer Support Trace Representative, "reporting to African American manager Andreia Sanders [ ("Sanders") ]." (ECF No. 28–2 ¶ 1.) In this capacity, Nolen served "a customer service function within FedEx and assist[ed] customers who call in with concerns regarding their shipments. . . . [T]he calls of Trace Representatives are routinely monitored by management and recorded for review and training purposes." (*Id.* ¶ 2.) "On May 12, 2009, Sanders became aware of a customer complaint regarding a call Nolen handled the previous day" and "asked Nolen to provide a written explanation of the interaction." (*Id.* ¶¶ 3–4.) Nolen's explanation stated the customer was " 'obnoxious from the gate,' 'was uncooperative,' and 'how she could jump down my throat was more important [than listening to Nolen].' " (*Id.* ¶ 4 (quoting ECF No. 28–4 at PageID 180).) "Sanders reviewed the call and disagreed with Nolen's characterization," finding "Nolen spoke to the customer with a 'short, sarcastic' tone and had cut the customer off on several occasions." (*Id.* ¶ 5 (quoting ECF No. 28–4 at PageID 186).) On May 27, 2009, Sanders issued Nolen a Warning Letter and suspended her for three days without pay. (*Id.* ¶ 6.) After the Warning Letter and unpaid suspension, Nolen "was provided with exten-

sive additional coaching and training to help her better handle customer issues," including personal coaching from Sanders. (*Id.* ¶ 8.) Nolen appealed the disciplinary action through FedEx's internal appeals process and the decision was upheld. (*Id.* ¶ 9.)

On December 4, 2009, Nolen was advised that she had "again violated the Customer Abuse/Work Avoidance portion of the Acceptable Conduct policy by failing to make a required call to a customer." (*Id.* ¶ 10.) Nolen received a "written counseling" and was told that "further occurrences cannot be tolerated and may result in additional disciplinary action." (*Id.* ¶ 11 (quoting ECF No. 28–4 at PageID 200) (internal quotation marks omitted).)

On May 18, 2010, Nolen was again disciplined in a Warning Letter regarding an incident on April 21, 2010, where she "repeatedly interrupted and talked over a customer, provided inaccurate information, challenged [the customer's] expressions of anger and frustration and provided little or no help in assisting [the customer] to resolve her issue," and an incident on April 29, 2010, where Nolen failed to advise a customer that his package was being returned to him. (*Id.* ¶¶ 11–13 (quoting ECF No. 28–4 at PageID 202) (internal quotation marks omitted).) The letter stated that Nolen's actions showed a "recurring pattern of Customer Abuse . . . [that] cannot be tolerated." (*Id.* ¶ 13 (quoting ECF No. 28–4 at PageID 203).)

FedEx has a written policy, the Acceptable Conduct Policy, "indicating that recurrent patterns of misconduct will not be tolerated and may subject an employee to termination." (*Id.* ¶ 14 (citing Zaborski Decl. ¶ 3, ECF No. 28–5; ECF No. 28–5 at PageID 237).) The Acceptable Conduct Policy stated, "Three notifications of deficiency within a 12–month period normally result in termination. However, an em-

ployee's entire employment history should be reviewed. Based on the severity of the occurrence, an employee may be terminated with less than 3 notifications of deficiency within a 12–month period." (*Id.* (citing Zabroski Decl. ¶ 3, ECF No. 28–5; ECF No. 28–5 at PageID 237).) The Acceptable Conduct Policy is "reinforced in the Standard Operating Procedure of Customer Support addressing Customer Abuse/Work Avoidance, which also describes the types of behavior that will be considered violations of the Acceptable Conduct Policy as it relates to customer abuse." (*Id.* ¶ 15 (citing Zaborski Decl. ¶ 4, ECF No. 28–5; ECF No. 28–5 at PageID 242–44).) Nolen was aware of these policies and acknowledged her awareness and familiarity "multiple times." (*Id.* ¶ 16.)

On May 18, 2010, FedEx terminated Nolen as she had "demonstrated a recurring pattern of violating the Acceptable Conduct Policy and Customer Abuse/Work Avoidance policies, and because she had accumulated three notices of deficiency within a twelve-month period," in violation of the Acceptable Conduct Policy. (*Id.* ¶ 17.)

It is also undisputed that "Nolen applied for FMLA leave on August 17, 2009 to attend therapy for depression and anxiety," and was granted leave from August 17, 2009, through February 17, 2010. (*Id.* ¶¶ 20–21.) "Nolen did not request any days off for FMLA leave that she was not granted." (*Id.* ¶ 22.)

As it relates to the instant Motion, it is further undisputed that former FedEx employee Brian Kohanyi ("Kohanyi"), a Caucasian employee, was terminated on December 14, 2009, and "had accumulated three deficiency notices within the immediately preceding twelve-month period: one for poor attendance and two for violating the Customer Abuse/Work Avoidance portion of the Acceptable Conduct [P]olicy."

(*Id.* ¶ 18.) Additionally, Kohanyi had "no history of FMLA activity." (*Id.*)

## B. Procedural History

Magistrate Judge Claxton set forth the procedural history of the case as follows:

On September 23, 2011, Plaintiff Clara Nolen ("Nolen") filed a Pro Se Complaint [ECF No. 1] pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Family and Medical Leave Act of 1993, 29 U.S.C. § 621 *et seq.* ("FMLA") against Defendant FedEx Services ("FedEx"). Prior to Nolen filing the instant action, she initially filed charges of discrimination with the Tennessee Fair Employment Commission and with the Equal Employment Opportunity Commission on June 1, 2010. [ (ECF No. 1 ¶¶ 6–7.) ] The Equal Employment Opportunity Commission issued a notice of Nolen's Right to Sue on July 7, 2011. [ (*Id.* ¶ 8.) ] The District Court then permitted Nolen to proceed in forma pauperis. [ (ECF No. 5).] The District Court next issued an Order correcting the docket to add Defendant FedEx Corporate Services, Inc., and remove Defendant FedEx Services. [ (ECF No. 6.) ]

Defendant FedEx Corporate Services answered Plaintiff's complaint on December 21, 2011. [ (ECF No. 8.) ].... [With leave of Court,] Defendant filed its First Amended Answer on February 20, 2012 [ (ECF No. 17) ].

On January 4, 2013, Defendant[ ] filed the instant Motion for Summary Judgment. [ (ECF No. 28.) ].... The Magistrate Judge issued an order on March 27, 2013 for the Plaintiff to show cause as to why the Court should not consider the Motion for Summary Judgment and recommend granting of the motion. [ (ECF No. 32.) ] Plaintiff has yet to respond to the Motion for Summary

Judgment. Plaintiff instead moved for an Extension to Show Cause [ (ECF No. 33) ] and moved to Amend her Complaint [ (ECF No. 34) ] on April 9, 2013. The Magistrate Judge denied the Motion to Compel and Motion for Extension to Show Cause on April 12, 2013. [ (ECF No. 36.) ] The Magistrate Judge recommended that the District Court deny Plaintiff's Motion for Leave to Amend on April 12, 2013, 2013 WL 1796408. [ (ECF No. 37.) ] (ECF No. 38 at 708–09.) This Court adopted the Magistrate Judge's April 12, 2013, Report and Recommendation and denied Plaintiff's Motion for Leave to Amend on April 29, 2013, 2013 WL 1796314. (ECF No. 40.)

Magistrate Judge Claxton filed the instant Report and Recommendation of Defendant's Motion for Summary Judgment on April 19, 2013. (ECF No. 38.) Plaintiff subsequently filed a Motion Opposing Summary Judgment (ECF No. 39), which the Court denied (ECF No. 52 at 2), and a Motion Reconsidering Summary Judgment Report from Magistrate Court (ECF No. 41), which the Court construed as timely filed objections to the Report and Recommendation (ECF No. 52 at 3).

Plaintiff then filed a Motion for Leave to Submit Evidence, which the Court granted in part. (*Id.* at 5.) The Court directed Plaintiff to file five "documents and/or things asserted ... to be material evidence in this case." (*Id.*) Plaintiff timely filed this material. (*See* ECF No. 55.) The Court will consider this evidence in support of Plaintiff's objections to the Magistrate Judge's Report and Recommendation and in opposition to Defendant's Motion for Summary Judgment.

On June 12, 2013, the Court issued a Notice to Defendant, stating that, the Court having construed Plaintiff's May 3, 2013, Motion as timely filed objections, the Defendant "may file ... responses to Plaintiff's objections." (ECF No. 56.) Defendant filed its response on June 26, 2013. (ECF No. 59.) Plaintiff subsequently filed a Reply to Defendant's response on July 1, 2013. (ECF No. 59.) Because Federal Rule of Civil Procedure 72(b)(2) does not contemplate a reply to a party's response to timely filed objections, and as there is no Local Rule to the contrary, *see* LR 72.1(g)(2), Plaintiff's Reply Opposing Defendant's Response is improvidently filed and is, therefore, STRICKEN.

On July 15, 2013, Plaintiff filed a Motion for Summary Judgment. (ECF No. 60.) Defendant filed a Motion to Strike Plaintiff's Motion for Summary Judgment on August 12, 2013. (ECF No. 66.) The deadline for filing dispositive motions was January 4, 2013. (*See* ECF No. 24 at 2.) As Plaintiff has neither sought leave from the Court to file her Motion, nor shown good cause as to why the Motion was untimely filed, Defendant's Motion to Strike is GRANTED and Plaintiff's Motion for Summary Judgment is STRICKEN.

## II. STANDARD OF REVIEW

### A. Magistrate Judge's Reports and Recommendations

Pursuant to Federal Rule of Civil Procedure 72, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3).

### B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir.2012). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir.2012). "A dispute over material facts is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman*, 670 F.3d at 680 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir.2012) (citing *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448–49 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

"To show that a fact is, or is not, genuinely disputed, both parties are required to either 'cite[ ] to particular parts of materials in the record' or 'show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Bruederle*, 687 F.3d at 776 (alterations in original) (quoting Fed.R.Civ.P. 56(c)(1)); *see also* Fed.R.Civ.P. 56(c)(1)(A); *Mosholder*, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the non-moving party's case.'"). The nonmoving party, when confronted with a properly supported motion for summary judgment, must "set out specific facts showing a genuine issue for trial." *Viergutz v. Lucent Techs., Inc.*, 375 Fed.Appx. 482, 485 (6th Cir.2010); *see also Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505.

As stated in the Court's Order of May 21, 2013, 2013 WL 2244624, Plaintiff did not timely respond to Defendant's Motion for Summary Judgment. (ECF No. 52 at 2.) Pursuant to Federal Rule of Civil Procedure 56(e),

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it....

Fed.R.Civ.P. 56(e)(3). Further, pursuant to Local Rule 56.1(d), "[f]ailure to respond to a moving party's statement of material facts ... within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d). The Court therefore ADOPTS the Report and Recommendation's Proposed Findings of Fact and finds the material facts undisputed for purposes of Defendant's Motion for Summary Judgment to the extent they are properly supported under Rule 56(c). *See Iqbal v. Pinnacle Airlines, Inc.*, 802 F.Supp.2d 909, 914–15 (W.D.Tenn.2011).

Despite Plaintiff's failure to respond to Defendant's Motion for Summary Judgment, the court "is required, at a minimum, to examine the movant's motion for

summary judgment to ensure that [it] has discharged [its] burden." *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 Fed.Appx. 374, 381 (6th Cir.2011) (quoting *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir.1991)) (internal quotation marks omitted). "In considering a motion for summary judgment, [a court] must draw all reasonable inferences in favor of the nonmoving party." *Phelps v. State Farm Mut. Auto. Ins. Co.*, 680 F.3d 725, 730 (6th Cir.2012) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505).

## C. Title VII Race Discrimination

 "[A] plaintiff in a race discrimination action 'has the burden of proving by a preponderance of the evidence a *prima facie* case.'" *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir.2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "To show employment discrimination, the plaintiff must present either direct evidence of discrimination or circumstantial evidence that would allow an inference of discriminatory intent." *Ross v. Pfizer, Inc.*, 375 Fed. Appx. 450, 453 (6th Cir.2010).

 "Direct evidence 'is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Id.* (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)).

A case relying on circumstantial evidence is analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later clarified in *Burdine*. The plaintiff must first establish a prima facie case of discrimination, which requires as follows:

> (1) that [she] is a member of a protected group; (2) that [she] was subject to an adverse employment action; (3) that [she] was qualified for the position from which [she] was fired; and (4) that [she] was treated differently than employees outside of the protected class for the same or similar conduct.

*Donald v. Buckman Labs., Inc.*, 527 Fed. Appx. 443, 447 (6th Cir.2013).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant meets this burden, the plaintiff must prove that the reason offered by the defendant is merely pretextual. *Id.* at 804, 93 S.Ct. 1817. In the summary-judgment context, "a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Carter v. Toyota Tsusho Am., Inc.*, 529 Fed.Appx. 601, 609 (6th Cir.2013) (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir.2012)) (internal quotation marks omitted).

## D. FMLA Retaliation

The FMLA states that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for ... a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA deems it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." *Id.* § 2615(a)(1). Additionally,

the FMLA makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." *Id.* § 2615(a)(2).

It is well-settled that there are two theories of recovery under the FMLA: the entitlement theory and the retaliation theory. *See Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 506–07 (6th Cir.2006). It is undisputed that Plaintiff's FMLA request was granted; therefore her claims arise solely under the retaliation theory. *See* ECF No. 38 at 715 n. 2.

Under the retaliation theory, the relevant inquiry "is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 160 (1st Cir. 1998); *accord Edgar,* 443 F.3d at 508. The employer's motive is "an integral part of the analysis 'because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights.'" *Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 707 (6th Cir.2008) (quoting *Edgar,* 443 F.3d at 508).

A plaintiff may support a retaliation claim by either direct or circumstantial evidence. An FMLA retaliation claim based on direct evidence

does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group. The evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that predisposition. Finally, an employee who has presented direct evidence of improper motive does not bear

the burden of disproving other possible nonretaliatory reasons for the adverse action. Rather, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.

*Daugherty,* 544 F.3d at 707 (alteration in original) (quoting *DiCarlo v. Potter,* 358 F.3d 408, 415 (6th Cir.2004)) (internal quotation marks omitted).

For FMLA retaliation claims based on circumstantial evidence, the court applies the same burden-shifting framework as *McDonnell Douglas. Edgar,* 443 F.3d at 508; *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir.2001). The plaintiff establishes a prima facie case of discrimination by showing that

(1) she availed herself of a protected right under the FMLA by notifying [the defendant] of her intent to take leave, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action.

*Edgar,* 443 F.3d at 508. Proximity in time can suffice as indirect evidence of the requisite "causal connection between the exercise of" FMLA rights and the subsequent termination. *Skrjanc,* 272 F.3d at 315.

If the plaintiff succeeds in establishing a prima facie case of retaliation, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for [plaintiff's] discharge." *Id.* If the defendant "articulates such a reason, then [the plaintiff] has the burden of showing that the articulated reason is in reality a pretext to mask discrimination." *Id.*

## III. ANALYSIS

### A. Title VII Claim

#### 1. Recommended Findings

In the Report and Recommendation, the Magistrate Judge recommends

that the Court find: (1) that Plaintiff relies entirely on circumstantial evidence to support her claim of racial discrimination; (2) that Plaintiff's claim must, therefore, be analyzed using the *McDonnell Douglas* framework; and (3) that under that framework, Plaintiff has met the first three prongs required to establish a prima facie case of racial discrimination. (ECF No. 38 at 714.) The Magistrate Judge, however, recommends that the Court find that Plaintiff has not satisfied the fourth prong, that is, "that someone outside [her] protected class was treated differently than similarly-situated, non-protected employees." (*Id.* (quoting *DiCarlo*, 358 F.3d at 415).) Furthermore, the Magistrate Judge recommends that even if Plaintiff had established the four prongs of a prima facie case of racial discrimination, Defendant has met its burden to show a legitimate, nondiscriminatory reason for the termination based on the application of Defendant's clear employee policies, and that Plaintiff "has not offered any evidence that FedEx's termination decision was pretextual." (*Id.* at 715 n. 1.)

On de novo review, the Court finds Defendant has met its initial summary-judgment burden to show there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Defendant provided undisputed evidence that a similarly situated, non-protected employee, Brian Kohanyi, received the same treatment as Plaintiff. (*Id.* at 714.) As Plaintiff offered no evidence to rebut Defendant's evidence, Defendant has met its initial summary-judgment burden.

### 2. Plaintiff's Objections

Plaintiff objects to the Magistrate Judge's recommendation to grant summary judgment to Defendant. Plaintiff disputes Defendant's version of the April 21, 2010, incident, stating the "customer was verbally upset and she could not un-derstand the system," that the customer "became so uncontrollable she was abusive and used profanity regarding the shipment," and that the customer "hung up after making the statement." (ECF No. 41 at 2.) Plaintiff argues that she was denied the "right to a full and fair investigation of other co-workers who heard the conversation from the Plaintiff's end and provided statements to that incident." (*Id.* at 3.)

Plaintiff also asserts that she will show the Defendant discriminated against her based on race "because [Plaintiff] was more educated with Associate [sic] Degree and (2) Bachelor [sic] Degrees and had experience and [sic] more qualified than her Senior Supervisor who was [f]emale, [w]hite, and only had a high school diploma." (*Id.*) Plaintiff contends that because of her education and experience, she was unfairly "targeted for abuse by customers where audio of the calls were [sic] always contradicting the investigation and disciplinary action." (*Id.*) Plaintiff further asserts she will show racial discrimination "because Senior Supervisor Teresa Porter has terminated only African Americans and Hispanics versus white employees in the Department." (*Id.*) Plaintiff also argues that Defendant "ha[s] not produced any documents regarding the behavior of the Plaintiff or the essential cause for her termination." (*Id.* at 4.)

To support her objections, Plaintiff submitted the following evidence:

(1) an affidavit from current FedEx employee Marilyn Johnson ("Johnson Affidavit") (ECF No. 55–1), "who was [sic] at the time [sic] a former co[-]worker with Plaintiff at her last position" (ECF No. 41 at 3);

(2) Audio from the customer phone call of April 21, 2010, which Plaintiff contends is contrary to Defendant's report, investi-

gation, and ultimate termination of Plaintiff (*id.*); and

(3) a Right–to–Sue letter from the EEOC (ECF No. 55–2).[1]

### 3. Court's Findings

■ Having reviewed Plaintiff's objections and the evidence submitted, the Court first finds that Plaintiff has not put forth any direct evidence of Defendant's alleged racial discrimination, as Plaintiff's submitted evidence does not demonstrate that "unlawful discrimination was at least a motivating factor in the employer's actions." *Ross*, 375 Fed.Appx. at 453 (internal quotation marks omitted). First, the Johnson Affidavit is irrelevant to the issue of racial discrimination and does not provide any direct evidence that Plaintiff was fired because of her race. Second, the audio of the April 21, 2010, phone call also does not demonstrate racial discrimination. Third, the Right–to–Sue Letter issued by the EEOC is not direct evidence of discrimination, but a necessary predicate to suit. *See* 42 U.S.C. § 2000e–5(f)(1); *Granderson v. Univ. of Mich.*, 211 Fed.Appx. 398, 400 (6th Cir.2006).

■ Therefore, the Court will analyze Plaintiff's claim based on the circumstantial evidence under the *McDonnell Douglas* framework.

The Court finds Plaintiff has not met her burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505 (1986). Plaintiff's assertions and submitted evidence do not satisfy the final prong of her prima facie case of racial discrimination, specifically that "she was replaced by a person outside the protected class or treated differently than similarly situated 'nonprotected' employees." *Ayers–Jennings v. Fred's Inc.*, 461 Fed.Appx. 472, 476 (6th Cir.2012) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817).

Plaintiff's assertions are not supported by citations to any documents in the record and therefore do not establish any genuine issues of material fact. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

Plaintiff's submitted evidence does not relate to her claims of racial discrimination. The Johnson Affidavit is irrelevant to the issue of racial discrimination as it does not provide any circumstantial evidence of racial discrimination, namely indicating that a similarly situated employee was treated differently.

The audio of the April 21, 2010, phone call does not establish a genuine issue of material fact as it is not circumstantial evidence of racial discrimination. While Plaintiff argues the audio supports her claim of wrongful termination because it shows Plaintiff "in no way provoked or caused the actions of the customer" (ECF No. 46 at 3), the Court finds the audio does not support her claims of racial discrimination. The audio is relevant to Plaintiff's internal dispute with Defendant regarding her violation of its policies regarding employee conduct, which has been reviewed by Defendant's internal review process, but is not circumstantial evidence that sim-

---

1. Plaintiff also submitted her employment history with Defendant from 1995 to 1999 (ECF No. 55–5), asserting that it showed "Plaintiff's promotions from department to department, pay scale, and other relevant material evidence" (ECF No. 46 at 5). The Court finds Plaintiff's employment history is irrelevant to her claims of racial discrimination and retaliation under the FMLA, and therefore does not create issues of material fact. The incidents which led to Plaintiff's termination occurred in 2009 and 2010, the employment history documents predate the time Plaintiff became a Customer Support Trace Representative, and the performance reviews contained in the employment history documents were not conducted by Plaintiff's supervisor at the time of her termination, Andreia Sanders.

ilarly situated employees were treated differently based on race.

The Right–to–Sue Letter does not establish a genuine issue of material fact because it is a necessary predicate to suit, not evidence of racial discrimination. *See* 42 U.S.C. § 2000e–5(f)(1); *Granderson v. Univ. of Mich.,* 211 Fed.Appx. 398, 400 (6th Cir.2006). Further, Defendant has not asserted that Plaintiff failed to exhaust her administrative remedies or "filed her claims untimely." (ECF No. 58 at 5.) Accordingly, the Right–to–Sue Letter is not evidence of a genuine issue of material fact.

Having reviewed Plaintiff's evidence and objections, the Court finds Plaintiff has not met her burden to establish a prima facie case of racial discrimination. Accordingly, Plaintiff has "fail[ed] to make a sufficient showing of an essential element of [her] case on which he bears the burden of proof," and "the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman,* 670 F.3d at 680 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Furthermore, the Court agrees with the Report and Recommendation that even if Plaintiff had established a prima facie case of racial discrimination, Defendant offered a legitimate, nondiscriminatory reason for Plaintiff's termination, specifically Plaintiff's three violations of Defendant's employee-conduct policy within a twelve-month period. (*See* ECF No. 38 at 715 n. 1.) Plaintiff has offered no evidence to create a genuine issue of material fact that the offered reason is pretextual.

Plaintiff's Objections are, therefore, OVERRULED, and the Court ADOPTS the Magistrate Judge's Recommendation to grant summary judgment for Defendant on Plaintiff's Title VII claims. Plaintiff's Title VII claims against Defendant are hereby DISMISSED WITH PREJUDICE.

## B. FMLA Claim

### 1. Recommended Findings

In the Report and Recommendation, the Magistrate Judge recommends that the Court find Plaintiff has only provided circumstantial evidence of FMLA retaliation, and has satisfied the first two prongs of the *McDonnell Douglas* framework establishing a prima facie case of FMLA retaliation. (ECF No. 38 at 715.) The Magistrate Judge recommends that the Court find that Plaintiff has not satisfied the third prong of showing a causal connection between her protected activity and her termination. (*Id.* at 715–16.) The Magistrate Judge states that, viewing the totality of the circumstances of the instant case, the proximity in time between Plaintiff's FMLA leave and her termination is insufficient to establish the requisite causal connection. (*Id.* at 715–16.) Furthermore, the Magistrate Judge recommends that even if Plaintiff had established a prima facie case of retaliation, Defendant has met its burden to show a legitimate, nondiscriminatory reason for the termination through the application of its clear employee policies, and Plaintiff has not "articulated any reasoning that would show [Defendant's] reason was pretext for discrimination." (*Id.* at 716 n. 3.)

On de novo review, taking the facts in the light most favorable to the non-movant, the Court finds Defendant has met its initial summary-judgment burden to show there are no genuine issues of material fact regarding the causal connection between Plaintiff exercising her rights under FMLA and the adverse employment action, and that Plaintiff has failed to establish a prima facie case of FMLA retaliation.

### 2. Plaintiff's Objections

Plaintiff objects to the Magistrate Judge's recommendation to grant summary judgment to Defendant on her FMLA claim. Plaintiff asserts that "because she was always being monitored, she was denied [leave under the FMLA] due to loss [sic] paperwork by FedEx she submitted, as well as denied accommodation for work[-]related stress." (ECF No. 41 at 3.) Plaintiff argues that after her approved leave, her doctor recommended she work part-time and that Defendant gave her "documents ... stating she had to give reason, [n]ot her physician [sic] as to why she needed to have her status change." (*Id.* at 4.) Plaintiff also asserts that, "due to her filing a grievance in dispute against her Supervisors and [sic] prior incident [sic] created a hostile retaliatory situation in her workplace environment." (*Id.*)

To support her objections, Plaintiff submitted the following evidence:

(1) Plaintiff's claim report for disability insurance, provided by Plaintiff's counseling center. (ECF No. 55-4.) Plaintiff argues this document shows "Plaintiff was entitled to the Family Medical Leave Act under the conditions of a medical provider." (ECF No. 46 at 3.) Further, Plaintiff contends the document shows that Defendant was violating the FMLA "by asking the Plaintiff, not her provider [sic] to go into detail of her illness which is in violation of the HIPPA [sic] law," and that "[t]he evidence shows Plaintiff was suspended for a violation of the leave [sic] under medical treatment instead of other alternative measure [sic] or even the employer seeking additional information from the health care provider and not her." (*Id.* at 4.)

### 3. Court's Findings

■ Having reviewed Plaintiff's objections and the evidence submitted, the Court first finds Plaintiff has not put forth any direct evidence of Defendant's alleged retaliation as the evidence submitted does not establish that Defendant was predisposed to discriminate on the basis of [the FMLA]," and that Defendant "acted on that predisposition." The submitted evidence only indicates that Plaintiff received FMLA leave. Therefore, the Court will analyze Plaintiff's claim on the indirect evidence submitted with her objections and the proximity in time of her termination to her FMLA leave under the *McDonnell Douglas* framework.

■ The Court notes that Defendant concedes that Plaintiff meets the first two requirements of the FMLA retaliation claim: she "availed herself of a protected right under the FMLA by notifying FedEx of her intent to take leave," and she suffered an adverse employment action. (ECF No. 38 at 715–16.) The Court finds Plaintiff has not met her burden to establish the third requirement of the prima facie case, however, the causal connection between her protected activity and the adverse employment action.

Plaintiff has not met her burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505 (1986).

Plaintiff's assertions are not supported by evidence, therefore they do not create a genuine issue of material fact. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

To the extent Plaintiff submitted evidence, Plaintiff's evidence does not satisfy the third prong of her prima facie case of retaliation, namely the causal connection between her protected activity and the adverse employment action. It is undisputed that Plaintiff asked for and received FMLA leave. The submitted evidence is not contradictory. The evidence, therefore, does not establish a causal connection between Plaintiff's FMLA leave and her

subsequent termination. Additionally, the Court agrees with the Report and Recommendation that the proximity in time from Plaintiff's FMLA leave to the adverse employment action does not establish the necessary causal connection. Plaintiff requested and received FMLA leave. Plaintiff returned from her FMLA leave in February 2010 and was terminated in May 2010. While only three months passed between Plaintiff's return and termination, Plaintiff's termination was due to her documented violations of well-established company policy. Taking the facts in the light most favorable to the Plaintiff, and viewing the totality of the circumstances of the instant case, the proximity in time of Plaintiff's FMLA leave and her termination does not indicate a retaliatory motive.

Accordingly, the Court finds Plaintiff has not met her burden to establish any genuine issues of material fact relating to the third prong of her prima facie case of retaliation. Accordingly, Plaintiff has "fail[ed] to make a sufficient showing of an essential element of [her] case on which [s]he bears the burden of proof," and "the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman,* 670 F.3d at 680 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

█ Furthermore, the Court agrees with the Report and Recommendation that even if Plaintiff had established a prima facie case of retaliation, Defendant offered a legitimate, nondiscriminatory reason for Plaintiff's termination, specifically Plaintiff's three violations of Defendant's employee-conduct policy within a twelve-month period. (*See* ECF No. 38 at 715 n. 1.) Plaintiff has offered no evidence to create a genuine issue of material fact that the offered reason is pretextual.

Plaintiff's Objections are, therefore, OVERRULED, and the Court ADOPTS the Magistrate Judge's Recommendation to grant summary judgment for Defendant on Plaintiff's FMLA claims. Plaintiff's FMLA retaliation claim against Defendant is hereby DISMISSED WITH PREJUDICE.

## IV. APPEAL ISSUES

On September 27, 2011, the Court granted Plaintiff leave to proceed in forma pauperis. (*See* ECF No. 5.)

█ "[D]istrict courts [should] make a certification under [28 U.S.C.] § 1915(a)(3) for all cases filed by ... non-prisoners seeking leave to proceed in forma pauperis on appeal." *McGore v. Wrigglesworth,* 114 F.3d 601, 611 (6th Cir.1997), *overruled on other grounds by LaFountain v. Harry,* 716 F.3d 944, 950 (6th Cir.2013). Pursuant to 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

The good-faith standard in the context of a criminal case is objective:

In the context of a criminal appeal, we do not believe it can be read to require a District Court to determine whether the would-be appellant seeks further review of his case in subjective good faith, i.e., good faith from his subjective point of view.... We hold ... that "good faith" in this context must be judged by an objective standard. We consider a defendant's good faith in this type of case demonstrated when he seeks appellate review of any issue not frivolous.

*Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) (footnote omitted).

The good-faith standard in civil cases, however, is subjective. *Coppedge* noted that,

[i]n discussing the "good faith" requirement of what is now 28 U.S.C. s 1915(a), 28 U.S.C.A. s 1915(a). Senator Bacon of the Senate Judiciary Committee said:

"When a judge has heard a case and it is about to be carried to an appellate court, he * * * is in a position to judge whether it is a case proceeding captiously, or viciously, or with prejudice, or from any other improper motive, or whether the litigant is proceeding in good faith." 45 Cong. Rec. 1533 (1910).

*Coppedge,* 369 U.S. at 444 n. 8, 82 S.Ct. 917. Furthermore, Coppedge noted that Senator Bacon "was discussing primarily civil suits" and cited *Jaffe v. United States,* 246 F.2d 760 (2d Cir.1957). *Jaffe* states that "[a]n appeal not taken in 'good faith,' as described in § 1915(a) is not the same as a 'frivolous' appeal, for bad faith imports a consciousness of frivolity as distinct from frivolity, simpliciter." *Jaffe,* 246 F.2d at 761.

In the instant case, the standard applied does not change the Court's determination. The Court finds that Plaintiff has not met her summary-judgment burden, but the determination is not so clear as to consider an appeal frivolous. Accordingly, the Court will not certify that an appeal will not be taken in good faith. Plaintiff may proceed in forma pauperis on appeal.

## V. CONCLUSION

On de novo review of the Magistrate Judge's Report and Recommendation, Plaintiff's objections are OVERRULED and the Court ADOPTS the Report and Recommendation in its entirety. Accordingly, Defendant's Motion for Summary Judgment is GRANTED. All claims by Plaintiff against Defendant are hereby DISMISSED WITH PREJUDICE.

## REPORT AND RECOMMENDATION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CHARMIANE G. CLAXTON, United States Magistrate Judge.

Before the Court is Defendant's Motion for Summary Judgment (Docket Entry "D.E." # 28). The instant motions was referred to the United States Magistrate Judge for Report and Recommendation. (D.E. # 31). For the reasons set forth herein, the Magistrate Judge RECOMMENDS that Defendant's Motion for Summary Judgment (D.E. # 28) be GRANTED.

## I. Procedural Background

On September 23, 2011, Plaintiff Clara Nolen ("Nolen") filed a Pro Se Complaint (D.E. # 1) pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* and the Family and Medical Leave Act of 1993, 29 U.S.C. § 621 *et seq.* ("FMLA") against Defendant FedEx Services ("FedEx"). Prior to Nolen filing the instant action, she initially filed charges of discrimination with the Tennessee Fair Employment Commission and with the Equal Employment Opportunity Commission on June 1, 2010. (Complaint ¶¶ 6–7). The Equal Employment Opportunity Commission issued a notice of Nolen's Right to Sue on July 7, 2011. (Complaint ¶ 8). The District Court then permitted Nolen to proceed in forma pauperis. (D.E. # 5). The District Court next issued an Order correcting the docket to add Defendant FedEx Corporate Services, Inc., and remove Defendant FedEx Services. (D.E. # 6).

Defendant FedEx Corporate Services answered Plaintiff's complaint on December 21, 2011. (D.E. # 8). Defendant next moved to amend its answer pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. (D.E. # 13). FedEx averred that Nolen worked for and was terminated by a subsidiary of FedEx Corporate Services, Inc., which was named at the time "FedEx Customer Information Services, Inc." and does business as "FedEx Tech-

Connect, Inc." (*Id.*) The District Court granted Defendant's Motion to Amend its Answer on February 17, 2012, (D.E. # 16) and Defendant filed its First Amended Answer on February 20, 2012 (D.E. # 17).

On January 4, 2013, Defendants filed the instant Motion for Summary Judgment. (D.E. # 28). Nolen then filed a Motion to Compel on February 8, 2013. (D.E. # 28). The Magistrate Judge issued an order on March 27, 2013 for the Plaintiff to show cause as to why the Court should not consider the Motion for Summary Judgment and recommend granting of the motion. (D.E. # 32). Plaintiff has yet to respond to the Motion for Summary Judgment. Plaintiff instead moved for an Extension to Show Cause (D.E. # 33) and moved to Amend her Complaint (D.E. # 34) on April 9, 2013. The Magistrate Judge denied the Motion to Compel and Motion for Extension to Show Cause on April 12, 2013. (D.E. # 36). The Magistrate Judge recommended that the District Court deny Plaintiff's Motion for Leave to Amend on April 12, 2013, 2013 WL 1796408. (D.E. # 37).

## II. *Proposed Findings of Fact*

Plaintiff Nolen is an African–American who was employed by FedEx as a Senior Customer Support Trace Representative, under the supervision of her manager Andreia Sanders. (Defendant's Statement of Material Undisputed Facts "Def. SOF" ¶ 1 & Deposition of Clara Nolen "Nolen Depo." pg. 133, Exh. 36). Calls made by Trace Representatives are routinely monitored for customer service and training purposes. (Def. SOF ¶ 2; Deposition of Clara Nolen "Nolen Depo.", pg. 149 & Exh. 43). On May 11, 2009, Nolen's manager, Andreia Sanders was alerted to a customer's complaint regarding a call made by Nolen the previous day. (Def. SOF ¶ 3; Nolen Depo. pg. 46 & Exh. 5).

On May 12, 2009, Ms. Sanders asked Nolen to review the asserted complaint against her and be prepared to discuss it with her. (Def. SOF ¶ 4; Nolen Depo. pgs. 47–49 & Exh. 6). Nolen explained that the customer was both initially rude and uncooperative with her. (Def. SOF ¶ 4; Nolen Depo. pgs. 49–54 & Exh. 7). After Ms. Sanders listened to the call, she sent Nolen a warning letter in which she agreed with the customer's assertion that Nolen was rude with the customer on the phone and used a short, sarcastic tone. (Def. SOF ¶ 5; Nolen Depo. pgs. 55–56 & Exh. 9).

Ms. Sanders then issued Nolen a three-day suspension without pay on May 27, 2009. (Def. SOF ¶ 6–7; Nolen Depo. pgs. 56–61 & Exh. 9). The warning letter sent to Nolen also explain that the warning letter was active for the next twelve months and additionally, "3 notifications of deficiency (i.e., any combination of warning letters and/or reminders) received within a 12–month period may result in your termination." (Nolen Depo. Exh. 9). Ms. Nolen filed a complaint through FedEx's Fair and Impartial Review Procedure "FAIR" against Ms. Sanders regarding the three day suspension. (Def. SOF ¶ 9; Nolen Depo. pgs. 57–59, 62–64 & Exh. 8). On July 17, 2009, FedEx's internal FAIR program upheld the three-day suspension. (Def. SOF ¶ 9; Nolen Depo. 63–64 & Exh. 11). Nolen underwent coaching sessions with Ms. Sanders and other individuals in October and November 2009 to improve her customer service skills. (Def. SOF ¶ 8; Nolen Depo. pgs. 68–72, 75–82 & Exh. 15, 16).

On August 17, 2009, Nolen applied for FMLA leave on August 17, 2009 to attend weekly therapy sessions for depression and anxiety. (Def. SOF ¶ 20; Nolen Depo. pgs. 152–155 & Exh. 46, 47, 48). FedEx granted Nolen FMLA leave from August

17, 2009 to February 17, 2010. (Nolen Depo. Exh. 48). Subsequently to granting Nolen FMLA leave, on December 4, 2009, Nolen was found in violation of the Customer Abuse/Work Avoidance policy due to her failure to make a required call on November 30, 2009. (Def. SOF ¶ 10; Nolen Depo. 82–86 & Exh. 17). Nolen was issued a written counseling and the letter further explained that additional occurrences would not be tolerated and could result in additional disciplinary action. (Def. SOF ¶ 10; Nolen Depo. Exh. 17). Nolen was next issued a warning letter on May 18, 2010 after Ms. Sanders performed a quality audit on one of Nolen's calls on April 21, 2010 and April 29, 2010. (Def. SOF ¶ 11–13; Nolen Depo. 102–105 & Exh. 20). Then on May 18, 2010, Nolen was terminated by FedEx because she had "demonstrated a recurring pattern of customer abuse and [had] been advised that recurrent patterns of misconduct cannot be tolerated." (Def. SOF ¶ 17; Nolen Depo. pgs. 105–107 & Exh. 21). The termination letter also explained that Nolen had "continuously displayed actions towards customers that are unacceptable and tarnish the integrity of the FedEx Brand and our service." (Nolen Depo. Exh. 21).

### III. Legal Standards

#### A. Pro Se Litigants

The Magistrate Judge initially notes that Plaintiff Nolen is proceeding as a pro se litigant in this matter. Pleadings filed by pro se litigants are to be "construed more liberally than pleadings drafted by lawyers." *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir.1992). While pro se litigants are afforded this less stringent standard, "pro se plaintiffs are not automatically entitled to take every case to trial .... the lenient treatment generally afforded to pro se litigants has limits."

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996). The 6th Circuit has held that there is no requirement to provide non-prisoner pro se litigants the benefit of special assistance with respect to summary judgment motions. *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir.1988); *see also U.S. v. Ninety Three Firearms*, 330 F.3d 414, 427–28 (6th Cir.2003). The Court in *Brock* decided to afford pro se non prisoner litigants no special assistance "out of a sense of fairness to other parties who choose counsel and must bear the risk of their attorney's mistakes. Thus, a litigant who chooses *himself* as a legal representative should be treated no differently." *Brock*, 840 F.2d at 343 (alteration in original) (quoting *Jacobsen v. Filler*, 790 F.2d 1362, 1364–65 (9th Cir.1986) (internal quotation marks omitted)).

#### B. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment pursuant to *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thaddeus–X v. Blatter*, 175 F.3d 378, 400 (6th Cir.1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986); *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 460 (6th Cir.2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, "[i]f a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: ... consider the fact undisputed for purposes of the motion...." Fed.R.Civ.P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

### C. Title VII Race Discrimination

Under Title VII, discrimination of the basis of "race, color, religion, sex, or national origin" constitutes an unlawful employment practice. 42 U.S.C. § 2000e–2(a). A plaintiff may establish a claim of disparate treatment based upon race either by introducing direct evidence of discrimination or by proving circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999) (emphasis added). To successfully pursue a direct-discrimination claim, the evidence must establish, *without any inferences or presumptions,* that discriminatory motives caused the adverse employment action. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000) (emphasis added); *see also Brack v. Shoney's, Inc.,* 249 F.Supp.2d 938, 947 (W.D.Tenn.2003). If the plaintiff introduces evidence of an adverse employment action on the basis of his protected status, the burden of production and persuasion shifts to the employer to prove that it would have taken the adverse employment action even had it not been motivated by discrimination. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir.1994) (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), applies to determine if the conduct violated Title VII.

First, a plaintiff must establish a prima facie case of discrimination, which requires as follows: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir.2004).

If plaintiff establishes the prima facie case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir.1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### D. FMLA Retaliation

The Family and Medical Leave Act, 29 U.S.C. §§ 2611–2619, provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following...." 29 U.S.C. § 2612(a)(1)(A)-(E) (Supp.2009). The Act deems it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* § 2615(a)(1). The Act additionally provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *Id.* § 2615(a)(2).

The Sixth Circuit recognizes two theories of recovery under the FMLA, the entitlement or interference theory and the retaliation theory. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 506–07 (6th Cir. 2006). When analyzing the entitlement theory, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Id.* at 507 (quoting *Arban v. W. Pub. Co.*, 345 F.3d 390, 401 (6th Cir.2003)). For a plaintiff to prevail on an entitlement claim, the plaintiff must prove that: (1) they were an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) the plaintiff was entitled to leave under the FMLA, (4) the plaintiff gave the employer notice of their intention to take leave, and (5) the employer denied the employee FMLA benefits to which the employee was entitled. *Id.*

The relevant inquiry under the retaliation theory "is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Id.* (quoting *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir.1998)). Furthermore, "[a]n employer's motive is an integral part of the analysis because retaliation claims impose liability on employers that against employees specifically *because* those employees invoked their FMLA rights." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir.2008) (alteration in original) (quoting *Edgar*, 443 F.3d at 508) (internal quotations omitted). In analyzing claims of

retaliation with indirect evidence under the FMLA, the Sixth Circuit applies the burden-shifting analysis from *McDonnell Douglas*. *Edgar*, 443 F.3d at 508. A Plaintiff can make a prima facie case of retaliation by showing that: (1) the plaintiff availed himself of a protected right under the FMLA by notifying his employer of his intent to take leave, (2) the plaintiff was adversely affected by an employment decision when he was discharged, and (3) the proximity in time between the plaintiff's request for leave and his discharge constitutes indirect evidence of a casual connection between his exercise of a right under the FMLA and the adverse employment decision. *Skrjanc*, 272 F.3d at 315. If the Plaintiff succeeds in proving a prima facie case of discrimination, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for [the plaintiff's] discharge." *Id.* If the employer then "articulates such a reason, then [the plaintiff] has the burden of showing that the articulated reason is in reality a pretext to mask discrimination." *Id.*

An FMLA retaliation based upon direct evidence of discrimination does not proceed under the *McDonnell Douglas* analysis. *Daugherty*, 544 F.3d at 707; *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir.2004). Direct evidence is defined as, "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Daugherty*, 544 F.3d at 707 (quoting *DiCarlo*, 358 F.3d at 415). The Sixth Circuit explained that analysis under direct evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* The evidence must establish both that "not only the plaintiff's employer was predisposed to discriminate on the basis [of the FMLA], but also that the

employer acted on that predisposition." *Id.* (alteration in original). If an employee presents direct evidence of improper motive, that employee "does not bear the burden of disproving other possible nonretaliatory reasons for the adverse action." *Id.* Instead, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Id.*

## IV. Proposed Conclusions of Law

Plaintiff has not responded to the order entered on March 27, 2013 for Plaintiff to respond to FedEx's motion for summary judgment. Summary judgment cannot be granted "in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir.1991). But "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir.2008) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (internal quotation marks omitted)). As such, the Court must still "intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or intenting the riposte for a silent party." *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 407 (6th Cir.1992). Thus, "the trial court may rely upon the facts presented and designated by the moving party." *In re St. Clair Clinic, Inc.*, 1996 WL 6531, at *2 (6th Cir. Jan. 8, 1996) (quoting *Guarino* at 404) (internal quotation marks omitted).

### A. Race Discrimination under Title VI

It is recommended that Nolen has presented no direct evidence of discrimination in this case. As the Motion for Summary

Judgment is unopposed, the Court has no contested facts or other evidence to consider. The nonmoving party "cannot rest upon the mere allegations or denials in his pleadings but must present specific facts showing that there is a genuine issue for trial." *Warren v. Nelson,* No. 2:05–CV–81, 2007 WL 677164, at *1 (E.D.Tenn. Mar. 1, 2007). Furthermore, "[t]o defeat a motion for summary judgment a plaintiff can no longer rely on the conclusory allegations of its complaint." *Warf v. U.S. Dept. of Veterans Affairs,* 713 F.3d 874, 878 (6th Cir. Apr. 11, 2013). In order to defend against summary judgment, the nonmoving party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Expert Masonry, Inc. v. Boone County, Ky.,* 440 F.3d 336, 341 (6th Cir.2006). Therefore, as there has been no direct evidence presented "which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions" *Wexler v. White's Fine Furniture,* 317 F.3d 564, 570 (6th Cir. 2003), it is recommended that there is no Title VII race discrimination claim supported by direct evidence.

It is further recommended that Nolen has failed to establish a prima facie claim of Title VII discrimination under the circumstantial evidence approach. To establish a Title VII race discrimination claim under the circumstantial evidence approach, Nolen must first prove a prima facie case of discrimination under the *McDonnell Douglas* framework. *DiCarlo,* 358 F.3d at 414. Taking the four elements in turn, and relying upon Defendant's statement of undisputed material facts, and other materials submitted, the Court recommends that Nolen cannot state a prima facie case of discrimination under Title VII. As an African–American, Nolen is a member of a protected class or minority (Nolen Depo. Exh. 36). The Magistrate Judge assumes that Nolen was qualified for the position because she was employed with FedEx for "25 years" and as a Customer Service Representative since "January 2000." (Nolen Depo. Exh. 36). Furthermore, Defendant has not offered any evidence that Nolen was anything other than qualified for her position. Nolen satisfies the third prong of *McDonnell Douglas* because she suffered an adverse employment action when FedEx terminated her May 18, 2010. (Def. SOF ¶ 18). But Nolen has not demonstrated that "someone outside [her] protected class was treated differently than a similarly-situated, non-protected employees." *DiCarlo,* 358 F.3d at 415.

FedEx's Statement of Material Facts states that Brian Kohanyi, a Caucasian former employee of FedEx was terminated on December 14, 2009 after accumulating three deficiency notices within the preceding twelve-month period. (Def. SOF ¶ 18). Nolen has offered no evidence of FedEx's disparate treatment of her was different than other similarly-situated, non-protected employees, nor has she offered evidence that Brian Kohanyi was not a similarly situated employee. An analogous case to the present matter is *Gibson v. Shelly Co.,* 314 Fed.Appx. 760 (6th Cir.2008). In *Gibson,* as in the present matter, the Sixth Circuit found that the plaintiff presented no evidence that the defendant treated him differently than other similarly-situated, non-protected employees. *Gibson v. Shelly Co.,* 314 Fed.Appx. 760, 768 (6th Cir. 2008).

As Nolen has failed to make a prima facie case for discrimination under Title VII, 42 U.S.C. §§ 2000e *et seq.,* or to establish discrimination by direct evidence, it is recommended that that the District Court grant FedEx's Motion for Summary

Judgment as to Nolen's Title VII race discrimination claim.[1]

### B. FMLA Retaliation

The Court recommends that Defendant's Motion For Summary Judgment on Plaintiff's FMLA claims be granted.[2] As Nolen has provided no evidence in support of her FMLA retaliation claim, the Court will "rely upon the facts presented and designated by the moving party." *Guarino*, 980 F.2d at 407. In analyzing Nolen's claims of FMLA retaliation, the Court notes that Nolen has "present[ed] [no] significant probative evidence in support of [her] complaint to defeat the motion for summary judgment", *Wexler*, 317 F.3d at 570, and therefore recommends that there is no direct evidence in support of Nolen's claim for FMLA retaliation.

Turning to analysis under the retaliation theory with circumstantial evidence approach, it is recommended that Nolen cannot make a prima facie claim of FMLA retaliation. FedEx concedes that Nolen meets the first two requirements of a prima facie FMLA retaliation claim. *See Memorandum in Support of Defendant's Motion for Summary Judgment* at pg. 11 ("There is no dispute that Nolen can satisfy the first three elements of her prima facie case."). First, Nolen availed herself of a protected right under the FMLA by notifying FedEx of her intent to take leave. (Def. SOF ¶ 20–21). Second, Nolen was adversely affected by an employment decision when FedEx discharged her. (Def. SOF. ¶ 17). FedEx granted Nolen FMLA leave for all requested days. (Def. SOF ¶ 22). But Nolen cannot establish a casual connection between her exercise of a right under the FMLA and the adverse employment action.

Regarding the proximity in time between Nolen's request for leave and the discharge, the Sixth Circuit has held that none of its prior decisions "squarely stand for the proposition that temporal proximity alone may never show a casual connection." *Clark v. Walgreen Co.*, 424 Fed. Appx. 467, 473 (6th Cir.2011) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524 (6th Cir.2008)). The Sixth Circuit has analyzed various time frames when establishing the casual connection between

---

**1.** Nolen had succeeded in stating a prima facie case of discrimination, then the employer would have the burden of "articulate[ing] some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). FedEx has a clear written policy in its Customer Information Services Manual that states "[t]hree notifications of deficiency within a 12–month period normally result in termination." (Def. SOF ¶ 14 & Declaration of Bridget Zaborski "Zaborski Dec." Exh. A). This policy is also contained in the Customer Support Standard Operating Procedure Manual. (Def. SOF ¶ 15 & Zaborski Dec. Exh. B). Nolen was aware of this policy when she acknowledged reading the Customer Support Standard Operation Procedure Manual. (Def. SOF ¶ 16 & Zaborski Dec. Exh. B). Therefore, as Nolen has not offered any evidence that FedEx's termination decision was pretextual, the undersigned would still recommend granting FedEx's Motion for Summary Judgment in the event of Nolen establishing a prima facie claim of discrimination.

**2.** Nolen appears to advance only FMLA retaliation claims. If Nolen did attempt to advance claims under the interference or entitlement theory, she would have to be able to prove that: (1) she was an eligible employee; (2) FedEx was an employer as defined in the FMLA; (3) she was entitled to leave under the FMLA and (4) she gave FedEx notice of her intention to take leave. (Def. SOF ¶ 20–21). But FedEx did not deny Nolen any days of FMLA leave that she requested. (*Id.* ¶ 22). Therefore, it is recommended that Nolen cannot state a claim under the entitlement or interference theory. *See Edgar v. JAC Products, Inc.*, 443 F.3d 501, 506–07 (6th Cir. 2006) (discussing the elements a plaintiff must prove under the entitlement theory).

the adverse employment action and the request for FMLA leave. *See, e.g. Id.* at 473 (finding that the temporal proximity of the employee's return from leave in January and his discharge in March was sufficient evidence of a casual connection); *Bryson v. Regis Corp.*, 498 F.3d 561, 570–71 (6th Cir.2007) (determining that an employee who was terminated three months after requesting FMLA leave was sufficient evidence of a casual connection); *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 737 (6th Cir.2006) (finding a four month gap between the employee availing himself of the protected action and the employer's termination was insufficient on its own but if there was other indicia of retaliatory conduct it could be sufficient to find a casual connection). The Sixth Circuit has further reasoned "[i]n analyzing the facts in temporal proximity cases, we have always looked at the totality of the circumstances to determine whether an inference of retaliatory motive can be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir.2010).

With this framework in mind, it is recommended that Nolen cannot state a prima facie claim of retaliation under the FMLA because she has not demonstrated a sufficient casual connection through the proximity in time between her termination and availing herself of a protected right under the FMLA. As Nolen has not responded to FedEx's Motion, Nolen has disputed none of the facts asserted by FedEx, nor has Nolen offered her own facts to contradict those of FedEx. Therefore, as Nolen has not presented "significant probative evidence in support of [her] complaint to defeat the motion for summary judgment[,]" *Expert Masonry*, 440 F.3d at 341, it is recommended that FedEx's Motion for Summary Judgment be granted on the Issue of FMLA retaliation.[3]

## V. Conclusion

For the reasons set forth herein, it is RECOMMENDED to the District Court that Defendant's Motion for Summary Judgment be GRANTED. It is RECOMMENDED that Nolen cannot state a prima facie claim for Title VII Discrimination and cannot state a prima facie claim for FMLA discrimination. Furthermore, the Magistrate Judge RECOMMENDS that if Nolen could state a claim for prima facie discrimination under Title VII and retaliation under the FMLA, FedEx has articulated a legitimate non-discriminatory reason for Nolen's discharge because Nolen was discharged after three deficiency notices within a twelve-month period; a policy which Nolen was aware of. As Nolen has not offered any facts to dispute FedEx's Motion, Nolen has not demonstrated that her discharge was pretextual. Accordingly, it is RECOMMENDED that

---

**3.** If Nolen had proven a prima facie case of FMLA retaliation, the burden would then shift back to FedEx "to articulate a legitimate, nondiscriminatory reason for [the plaintiff's] discharge." *Skrjanc*, 272 F.3d at 315. FedEx has clearly met this burden because Nolen was discharged for her recurrent instances of violations of the Acceptable Conduct and Customer Abuse policies. Next, the burden would shift back to Nolen to prove that "the articulated reason is in retaliatory a pretext to mask discrimination." *Id.* As discussed above, this policy provided that three instances of deficiency within a twelve-month period could result in termination. FedEx has met its burden of showing a legitimate reason for Nolen's discharge, and Nolen as not articulated any reasoning that would show the articulated reason was pretext for discrimination. Therefore, it is recommended that should Nolen have met her prima facie claim of FMLA retaliation, FedEx has articulated a non-discriminatory reason for her discharge, and Nolen has not demonstrated that the articulated reason was pretextual.

FedEx's Motion for Summary Judgment be GRANTED in its entirety.